1  | E. MARTIN ESTRADA
United States Attorney
2  | MACK E. JENKINS
Assistant United States Attorney
3  | Chief, Criminal Division
JAMES C. HUGHES (Cal. Bar No. 263878)
4  | Assistant United States Attorney
Major Frauds Section
5  |      1100 United States Courthouse
      312 North Spring Street
6  |      Los Angeles, California 90012
      Telephone: (213) 894-2579;
7  |      Facsimile: (213) 894-6269
      E-mail:   james.hughes2@usdoj.gov

**FILED**
CLERK, U.S. DISTRICT COURT

**9/9/2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

             v.

JOHN ROBERT LEAKE,

        Defendant.

No. CR 2:24-CR-00533-JFW

PLEA AGREEMENT FOR DEFENDANT
JOHN ROBERT LEAKE

    1.   This constitutes the plea agreement between John Robert Leake ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant's scheme to defraud certain victims who invested and loaned their funds to defendant.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

                DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information, in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud in violation of 18 U.S.C. § 1343 and transactional money laundering in violation of 18 U.S.C. § 1957.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to

satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2    additional one-level reduction if available under that section.

3            d.    Except for criminal tax violations (including

4    conspiracy to commit such violations chargeable under 18 U.S.C. §

5    371), not further criminally prosecute defendant for violations of 18

6    U.S.C. §§ 1028A, 1343, 1956, and 1957 arising out of defendant's

7    conduct described in the agreed-to factual basis set forth in Exhibit

8    B attached to this plea agreement.  Defendant understands that the

9    USAO is free to criminally prosecute defendant for any other unlawful

10   past conduct or any unlawful conduct that occurs after the date of

11   this agreement.  Defendant agrees that at the time of sentencing the

12   Court may consider the uncharged conduct in determining the

13   applicable Sentencing Guidelines range, the propriety and extent of

14   any departure from that range, and the sentence to be imposed after

15   consideration of the Sentencing Guidelines and all other relevant

16   factors under 18 U.S.C. § 3553(a).

17                          NATURE OF THE OFFENSES

18       4.   Defendant understands that for defendant to be guilty of

19   the crime charged in count 1, that is, wire fraud, in violation of

20   Title 18, United States Code, Section 1343, the following must be

21   true:

22           a.    Defendant knowingly participated in a scheme or plan

23   to defraud, or a scheme or plan for obtaining money or property by

24   means of false or fraudulent pretenses, representations, or promises,

25   or omitted facts;

26           b.    The statements made or facts omitted as part of the

27   scheme were material; that is, they had a natural tendency to

28
                                      4

influence, or were capable of influencing, a person to part with money or property;

      c.   The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

      d.   The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

5.   Defendant understands that for defendant to be guilty of the crime charged in count 2, that is, transactional money laundering, in violation of Title 18, United States Code, Section 1957, the following must be true:

      a.   Defendant knowingly engaged or attempted to engage in a monetary transaction;

      b.   Defendant knew the transaction involved criminally derived property;

      c.   The property had a value greater than $10,000;

      d.   The property was, in fact, derived from specified unlawful activity; and

      e.   The transaction occurred in the United States.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation

of Title 18, United States Code, Section 1957, is: 10 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 30 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

8.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is not more $5,314,099, but recognize and agree that this amount could change

6

based on facts that come to the attention of the parties prior to sentencing.

9.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable

and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

12.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in the factual basis attached to this agreement as Exhibit B and agree that this statement of facts is sufficient to support a plea of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

    14.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level:  25 Loss Greater than $3.5 Million and Less than $9.5 Million | | [U.S.S.G. §§ 2S1.1(b)(2)(A) 2B1.1a, 2B1.1b(1) ] |
| Specific Offense Characteristics | | |
| Conviction under 18 U.S.C. § 1957:  1 | | [U.S.S.G. § 2S1.1(b)(2)(A)] |

Defendant and the USAO agree that the two counts of the information, wire fraud in violation of 18 U.S.C. § 1343 transactional money laundering in violation of 18 U.S.C. § 1957 ("the group") constitute a Group of Closely Related Counts under U.S.S.G. § 3D1.1, that the offense level applicable to the group is determined under U.S.S.G. § 2S1.1., and that the base offense level for purposes of this computation is the offense level for the underlying wire fraud determined under U.S.S.G. § 2B1.1.  Defendant and the USAO agree that the base offense level for purposes of this computation is 25 because

the loss amount at issue is between $3.5 million and $9.5 million (not more than $5,314,059).  Defendant and the USAO further agree that one-level upward adjustment under 2S1.1(b)(2)(1) is applicable based on defendant's conviction under 18 U.S.C. § 1957.  The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 27 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed, with the exception that defendant may seek and argue for a zero-point offender adjustment under U.S.S.G. § 4C1.1.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

    15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

11

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that could be filed.

### WAIVER OF STATUTE OF LIMITATIONS

18.  Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

### WAIVER OF APPEAL OF CONVICTION

19.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

1

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

2      20.  Defendant agrees that, provided the Court imposes a total

3  term of imprisonment on all counts of conviction of no more than 51

4  months, defendant gives up the right to appeal all of the following:

5  (a) the procedures and calculations used to determine and impose any

6  portion of the sentence; (b) the term of imprisonment imposed by the

7  Court; (c) the fine imposed by the Court, provided it is within the

8  statutory maximum; (d) to the extent permitted by law, the

9  constitutionality or legality of defendant's sentence, provided it is

10  within the statutory maximum; (e) the amount and terms of any

11  restitution order, provided it requires payment of no more than

12  $5,314,059; (f) the term of probation or supervised release imposed

13  by the Court, provided it is within the statutory maximum; and

14  (g) any of the following conditions of probation or supervised

15  release imposed by the Court: the conditions set forth in Second

16  Amended General Order 20-04 of this Court; the drug testing

17  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

18  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19      21.  The USAO agrees that, provided (a) all portions of the

20  sentence are at or below the statutory maximum specified above and

21  (b) the Court imposes a term of imprisonment of no less than 41

22  months, the USAO gives up its right to appeal any portion of the

23  sentence, with the exception that the USAO reserves the right to

24  appeal the following: (a) the amount of restitution ordered if that

25  amount is less than $5,314,059.

26

27

28

RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

23. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

24. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the

express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

15

evidence derived from the statements should be suppressed or are
inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
### OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

27.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 14 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions

16

different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

30.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          9/4/2024
JAMES C. HUGHES                             Date
Assistant United States Attorney


_____          8/9/24
JOHN ROBERT LEAKE                           Date
Defendant


_____          8/9/2024
EVAN J. DAVIS                               Date
JONATHAN KALINSKI
Attorneys for Defendant John Robert
Leake

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorneys.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorneys in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____
JOHN ROBERT LEAKE
Defendant

8/9/24
_____
Date

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am John Robert Leake's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          8/9/2024
EVAN J. DAVIS                            Date
JONATHAN KALINSKI
Attorneys for Defendant John Robert
Leake

1

<u>EXHIBIT B – FACTUAL BASIS</u>

2    1.    Beginning no later than in or about June 2015, and

3 continuing through at least in or about January 2020, in Los Angeles

4 County, within the Central District of California, and elsewhere,

5 defendant, knowingly and with the intent to defraud, devised and

6 executed a scheme to defraud victims as to material matters, and to

7 obtain money and property from victims by means of materially false

8 and fraudulent pretenses, representations, and promises, and the

9 concealment of material facts.

10    2.    The scheme to defraud operated, in substance, as follows:

11        a.    Defendant would solicit funds from victims by falsely

12 claiming that he was participating in multiple lucrative business

13 ventures, including the subleasing of luxury real estate properties,

14 and real estate investing.  Defendant would offer the victims the

15 opportunity to loan him funds for him to invest in these purported

16 ventures generally in exchange for a high fixed rate of return.  In

17 fact, as defendant then knew, the investment opportunities in the

18 business ventures defendant promoted to the victims were often

19 fabricated and non-existent, and were devised by defendant to defraud

20 the victims and deceive them into providing defendant with their

21 funds.

22        b.    To persuade and induce the victims to loan funds to

23 him purportedly for him to invest, defendant would often falsely

24 claim that he was personally investing large amounts of his own money

25 in the business ventures he promoted to the victims.  In fact,

26 defendant hardly ever invested his personal funds in the purported

27 business ventures.

28

21

1          c.   To persuade and induce the victims to loan him funds,

2    defendant would also often fraudulently offer to personally guarantee

3    return of the victims' loans and provide them promissory notes

4    purporting to memorialize defendant's promise to repay the victims at

5    a fixed rate of interest (the "Promissory Notes").  Defendant falsely

6    told victims that he was very successful in his business ventures and

7    had accumulated substantial personal assets and income.  In fact, as

8    defendant then knew, he lacked sufficient personal assets and income

9    to repay the victims pursuant to the Promissory Notes.

10         d.   After receiving the victims' funds, defendant would

11   often not use the funds for any of the investment purposes for which

12   the funds had been provided him by the victims.  Instead, defendant

13   would use some of the victims' funds to pay for defendant's personal

14   expenses, including paying his credit card bills, car payments, rent,

15   and gambling expenses.

16         e.   In order to continue his fraudulent scheme and prevent

17   his victims from discovering the fraud, defendant would often use

18   some of the victims' funds to lull the victims by making purported

19   "interest" and "capital" payments on the Promissory Notes.  Defendant

20   used a small amount of his personal funds to make these payments.

21         f.   Defendant would conceal from the victims the material

22   facts that he used victims' funds for unauthorized purposes,

23   including payments of defendant's personal expenses, gambling

24   activity, and payments on the Promissory Notes.

25         g.   Between 2015 and 2020, defendant often fraudulently

26   solicited and received a total of approximately $8,129,450 from

27   Victims A, B, C, D, E, and F.  As a result of defendant's fraud

28

scheme, these victims sustained total fraud losses of not more than $5,314,059.

**A. VICTIM SUMMARY**

<u>Victim A</u>

3.    Defendant met Victim A through mutual friends in approximately 2014.  Between June 2015 and October 2016, defendant solicited funds from Victim A often based on false representations that defendant would invest the funds in the following purported business opportunities: 1) gold mines in Ghana; 2) gold mines in Alaska; and 3) purchase of third-party debts held by banks.

4.    Between June 2015 and October 2016, Victim A transferred $1,753,000 to defendant in reliance on defendant's false representations that he would use the funds to invest all of the loaned funds in gold mines and third-party bank debt purchase investment opportunities.  In fact, defendant invested only a small portion of the funds he received from Victim A in gold mines and did not invest in the purchase of third-party bank debt.  Defendant concealed these material facts from Victim A.

5.    To lull Victim A, defendant made some payments to Victim A that defendant falsely characterized as interest on Victim A's loan. After Victim A demanded repayment in 2018, defendant returned some additional funds to Victim A.  As a result of defendant's fraud scheme, Victim A suffered a fraud loss of not more than $1,104,000.

<u>Victim B</u>

6.    Victim B was defendant's friend.  Defendant fraudulently solicited funds from Victim B by falsely claiming that defendant had a connection with a Los Angeles real estate agent who would alert

defendant to luxury real estate properties available for long-term lease in Southern California, that defendant would enter into long-term leases for these luxury properties and pay one or two years rent upfront, and then sublease the properties for substantially higher rental rates to wealthy tenants to generate investment profits. Defendant falsely told Victim B that funds Victim B provided defendant would be put toward these leased rental properties in Los Angeles and the collected subtenants' rents would support a fixed return for Victim B. Defendant also falsely told Victim B that defendant was investing his own money in the rental properties venture. To induce Victim B to invest in the rental properties, defendant also provided Promissory Notes to Victim B.

7.    In fact, as defendant then knew, there were no rental property leases and no paying subtenants, and defendant did not invest any portion of Victim B's funds or defendant's own funds in leased rental properties. Defendant used a portion of Victim B's funds to make lulling payments to Victim B and to pay defendant's personal and gambling expenses. Defendant concealed these material facts from Victim B.

8.    Between June 2017 and August 2018, in reliance on defendant's false statements and omissions of material facts concerning the purported rental properties investments, Victim B invested $816,000 with defendant.

9.    Defendant also fraudulently solicited funds from Victim B based on false representations that the funds would be used to co-invest in various business opportunities with a prominent billionaire with whom defendant claimed to have a business relationship. In

fact, defendant never maintained a business relationship of any kind with the billionaire and did not participate in any business ventures with him.  Defendant concealed these material facts from Victim B.

10.  Between August 2017 and November 2017, Victim B made four payments to defendant, together totaling $600,000, in reliance on defendant's false representations that the funds would be invested with the billionaire.  Defendant did not invest any of Victim B's funds with the billionaire or his business entities.

11.  In July 2018, defendant informed Victim B that defendant had met with a wealthy landowner in Costa Rica who was looking for investors for a Costa Rican property development.  Defendant offered Victim B the opportunity to join defendant in the venture in which defendant claimed to be investing ("the Costa Rica Property").

12.  On or about July 11, 2018, to induce Victim B to send money to defendant for him to invest in the Costa Rica Property, defendant emailed Victim B a purported escrow agreement purportedly signed by the purported property owner and defendant, as well as a copy of a check written by defendant to the purported property owner for $500,000 as downpayment on the Costa Rica Property.  In fact, as defendant then knew, the escrow agreement was fabricated and not signed by the purported property owner, and the $500,000 check was never provided to the purported property owner.  These material facts were concealed from Victim B by defendant.

13.  On or about July 12, 2018, in reliance on defendant's misrepresentations and omissions of material fact concerning the Costa Rica Property, Victim B wired $200,000 to defendant to pay back past loans and invest in Costa Rica property.

14.  Between August 2018 and January 2019, defendant fraudulently induced Victim B to make personal loans to defendant totaling $135,250.  To obtain these loans, defendant misrepresented to Victim B some of the reasons he needed the loans.  Specifically, defendant falsely represented to Victim B that he needed the loans because some of his money was tied up in the business ventures in which defendant claimed to have invested.

15.  Victim B's payments to defendant total $1,952,250.  To lull Victim B, defendant made some payments to Victim B that defendant falsely characterized as interest payments generated by the investments that defendant made with Victim B's funds, as well as some repayments on the personal loans defendant obtained from Victim B.  As a result of defendant's fraud scheme, Victim B suffered a fraud loss of not more than $921,500.

Victim C

16.  Victim C is Victim B's father, who referred Victim C to defendant.  Defendant fraudulently induced Victim C to provide funds for defendant to use to invest in purported luxury real estate leases by making substantially the same misrepresentations and omissions of material fact that defendant used to defraud Victim B, as alleged above.  In fact, as defendant then knew, there were no rental property leases and no paying subtenants, and defendant did not invest any portion of Victim C's funds or defendant's own funds in leased rental properties.  Defendant used a portion of the funds obtained from Victim C to make lulling payments to Victim C and to pay defendant's personal and gambling expenses.  Defendant concealed these material facts from Victim C.

17.   Between April 2018 and August 2018, in reliance on defendant's false statements and omissions of material facts concerning the purported rental properties investments, Victim C loaned approximately $325,000 to Pack Holdings, an entity Victim B owned with defendant.

18.   After making approximately $80,000 in return payments to Victim C, defendant ceased all further payments.  As a result, defendant's fraud scheme, Victim C suffered a fraud loss of not more than $245,000.

Victim D and Victim E

19.   Victim D and Victim E were both introduced to defendant by and were acquaintances of Victim B, who encouraged Victim D and Victim E to invest with defendant through a loan to Pack Holdings despite their not knowing defendant beforehand.  Defendant fraudulently solicited and induced Victims D and E to loan funds so defendant could invest in purported luxury real estate leases by making, and causing Victim B to make, to Victims D and E substantially the same misrepresentations and omissions of material fact that defendant used to defraud Victim B, as alleged above.  In fact, as defendant then knew, there were no rental property leases and no paying subtenants, and defendant did not invest any portion of Victim D's funds, Victim E's funds, or defendant's own funds in leased rental properties.  Defendant used a portion of the funds obtained from Victim D and Victim E to pay defendant's personal and gambling expenses and to make lulling payments to Victim B. Defendant concealed these material facts from Victims D and E.

20.   Around December 2017, in reliance on defendant's false statements and omissions of material facts concerning the purported rental properties investments, Victim D and Victim E each invested $100,000 with defendant and Victim B.  As a result of defendant's fraud scheme, Victim D suffered a fraud loss of $85,000 and Victim E suffered a fraud loss of $100,000.

Victim F

21.   Victim F met defendant in 2018 at a dinner hosted by mutual friends.  Victim F and defendant subsequently became friends and frequently socialized.

22.   In 2019, defendant began soliciting Victim F to loan funds for LEAKE to invest in various purported business ventures. Defendant initially solicited and induced Victim F to loan funds so LEAKE could invest in a purported "rent factoring" venture in which defendant falsely claimed defendant would pay rental real estate owners an up-front cash payment in exchange for the property's rental revenue stream.  Defendant also falsely claimed that he was investing his own money in the venture and provided Victim F with his Promissory Notes as an inducement to invest.

23.   Defendant used a portion of the funds obtained from Victim F to make lulling payments to Victim F and other victims, and to pay defendant's personal and gambling expenses.  Defendant concealed these material facts from Victim F.

24.   Between March 2019 and December 2019, in reliance on defendant's false statements and omissions of material fact concerning the purported rent factoring investments, Victim F invested $1,932,500 with defendant.

Between March 2019 and March 2020, defendant often fraudulently induced Victim F to make personal loans to defendant totaling $1,966,950.  To obtain these loans, defendant sometimes misrepresented to Victim F the reasons he needed the loans and what he would use the loan proceeds for.  For example, in March 2019, Victim F loaned defendant $500,000 in reliance on defendant's false statement that the funds would be used by a third party to invest in real property in Dubai.  In fact, as defendant then knew, the loan proceeds would not be used for a Dubai investment but rather to make lulling payments to Victim F and to pay defendant's personal and gambling expenses.

25.  Between March 2019 and March 2020, Victim F made total investment and loan payments to defendant of $3,899,450, and received return payments from defendant of only approximately $875,891.  As a result of defendant's fraud scheme, Victim F suffered a fraud loss of not more than $2,858,559.

**B. USE OF THE WIRES**

26.  On or about July 11, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant, for the purpose of executing the above-described scheme to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce an email sent by defendant from his personal email address to an email address controlled by Victim B.  This email contained a purported escrow agreement and bank check that defendant fraudulently used to deceive Victim B into believing that defendant was engaged in the purchase of the Costa Rica Property

and to persuade Victim B to provide money to defendant for investment in that property.

**C. MONETARY TRANSACTION INVOLVING CRIMINALLY DERIVED PROPERTY**

27.  On or about July 12, 2018, in Los Angeles County, within the Central District of California, defendant engaged in a monetary transaction, in and affecting interstate commerce, in a value greater than $10,000, involving funds that he knew to be criminally derived property, and which funds, in fact, were derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, as described in Count One of the Information, namely, the wire transfer of $24,762.46 from a personal checking account held by defendant with Wells Fargo Bank, N.A. ("Wells Fargo") with the account number ending #0789 to a business checking account controlled by defendant and held in the name of Pack Holdings Group LLC, with Wells Fargo with the account number ending #5671.